**GULF REFINING CO., etc., Plaintiff, v. OIL WORKERS INTERNATIONAL UNION, etc. et, Defendants.**

Common Pleas Court, Lucas County.

No. 177108.    Decided March 1953.

## OPINION

By HACKETT, J.

The petition herein was filed March 7, 1953, by Gulf Refining Company, as plaintiff, against Oil Workers International Union, C. I. O., an association; Oil Workers International Union, C. I. O., Local 346; and several other persons, officers or members of such unions, as defendants.

At the same time plaintiff requested a temporary restraining order as prayed for in the petition. The court granted a temporary restraining order. Thereafter, on March 9, 1953, the plaintiff filed a motion requesting an order of temporary injunction. This motion came on for hearing before the court on Monday, March 9, 1953, at 2:00 o'clock p. m.

It appears here from the allegations of the petition or from the evidence. or both—the petition having been sworn to positively—that the plaintiff Gulf Refining Company is a Delaware corporation with a place of business, an oil refinery, terminals and bulk plants situated in Toledo. The company is engaged in the manufacture and distribution of gasoline and other petroleum products.

The defendant Oil Workers International Union, C. I. O. is an unincorporated voluntary association of individual members known as a labor organization affiliated with the Congress of Industrial Organizations;

The defendant Oil Workers International Union, Local 346, is an unincorporated voluntary association of individual persons known as a labor organization and is duly constituted body within the Oil Workers International Union. The members of said local are members of Oil Workers International Union;

The defendant, William V. Flower is the duly appointed and acting international representative of Oil Workers International Union and as such representative is the duly appointed agent, representative and advisor of Oil Workers International Union, Local No. 346.

The names, status, and positions held by other of the defendant members of the union are set forth in the petition.

It is further alleged in the petition that there are other persons not named in the petition who are, likewise, members of Oil Workers International Union and its Local No 346, as such persons are too numerous to be named in the petition and that the questions involved are of common and general interest to all of the defendants and to all the members of Oil Workers International Union and its Local No. 346.

Plaintiff owns and operates, as a part of its Toledo sales division, terminals and bulk plants located at 2762 Front Street, Toledo, Ohio, and 2952 Front Street, Toledo, Ohio; that in the operation of said terminals and bulk plants plaintiff has employees who are members of Petroleum and Allied Workers, Local No. 530, a labor organization affiliated with the American Federation of Labor, and that such Petroleum and Allied Workers, Local No. 530 represents the employees of plaintiff at such terminals and bulk plants.

On July 29, 1952, plaintiff and said Petroleum and Allied Workers, Local No. 530, A. F. L., entered into a collective bargaining agreement effective June 1, 1952, to remain in force and effect until midnight, May 31, 1953. The agreement provides that during the term thereof there should be no interruption or stoppage of work by said union through strikes, or otherwise, and no lock-outs by plaintiff. No labor dispute exists between plaintiff company and said Petroleum and Allied Workers Union, No. 530, A. F. L.

A labor dispute does exist between plaintiff and the defendant, Oil Workers International Union and Oil Workers International Union, Local No. 346, C. I. O., as a result of which dispute employees of the plaintiff at its Toledo refinery, who are represented by such defendant unions, are now on strike.

Since February 25, 1953, at 11:30 o'clock p. m. to the date of the filing of the petition herein the defendants Oil Workers International Union and Oil Workers International Union, Local No. 346, and the individual defendants named in the

petition have picketed plaintiff's refinery at 2935 Front Street, Toledo, Ohio, the legality of which action is **not** placed in issue in this action.

Beginning, however, on March 6th, 1953, at 9:30 a. m. and continuing to the date of the filing of the petition herein said defendants have picketed **plaintiff's terminals and bulk plants** located at 2762 Front Street, Toledo, Ohio, and 2952 Front Street, Toledo, Ohio, which said terminals and bulk plants are separate operations at separate locations from plaintiff's refinery. Plaintiff contends that the purpose of such picketing is to cause and induce plaintiff's employees at such terminals and bulk plants to stop work and thereby violate the provisions of their collective bargaining agreement between the plaintiff and said union, Petroleum and Allied Workers, Local No. 530, A. F. L.; and, further, that as a consequence thereof plaintiff's employees, who are members of Petroleum and Allied Workers, Local 530, A. F. L., have breached their agreement with plaintiff.

It further appears from the evidence that plaintiff has now in force in the city of Toledo and vicinity 13,697 contracts to furnish fuel oil to that number of residences, hospitals and schools; that it has, also, and in addition, from 1200 to 1500 contracts with commercial concerns for the product of plaintiff company. Plaintiff contends it will be unable to perform these contracts if picketing continues at its terminal and bulk plant facilities; and that a continuation of such picketing, which plaintiff alleges to be illegal and unlawful, will continue unless enjoined by order of this court.

The plaintiff alleges that the continuance of the picketing will result in danger to life and limb of plaintiff's employees at said terminals and bulk plants, and that irreparable loss and damage to plaintiff's property and plaintiff's business will result, for which plaintiff has no adequate remedy at law.

It appears further from the evidence that plaintiff has an investment in Toledo approximating $25,000,000.00; that it employs at the refinery between 295 and 300 people who are represented by Oil Workers International Union, C. I. O., Local 346; that the plant has been shut down by a strike since February 25, 1953; that no agreement for settlement has been reached; that one or two members of the C. I. O. Union work approximately 65 per cent of their time at the bulk terminal; that the contract between plaintiff and Petroleum and Allied Workers, Local 530, A. F. L., marked Exhibit (1), is in full force and effect and expires, unless extended, on May 31, 1953; that such contract covers all employees at the bulk terminal other than clerical employees; that there is no dispute between the employees at the bulk terminal and plaintiff; that on March 6th,

1953, the gates at the bulk terminal were picketed; that the pickets were members of the C. I. O. Union who are on strike at the refinery; that the pickets refused to let the drivers of bulk terminal trucks through the gates; Charles Crawford, a member of the C. I. O. Union, testified that he picketed the bulk terminal in front of both gates; William V. Flower testified that he is a member of the C. I. O. Union; he testified that the picketing is for the purpose of establishing that the union has a dispute. He further testified, without objection, that his union does not have any dispute with the bulk terminal.

In oral argument made at the hearing counsel for the defendants quoted at length from the case of **W. E. Anderson Sons Company v. Local Union No. 311, 156 Oh St, 451, 46 O. O. 460.** In that case a building trades union was involved in a labor dispute with one of several contractors on a construction job. The union maintained pickets who carried banners. The trial court granted an injunction against such picketing. The Court of Appeals on a trial de novo denied the injunction. The Supreme Court of Ohio, one judge dissenting, reversed the Court of Appeals and rendered final judgment of injunction.

The facts in that case and in the case at bar are substantially parallel. Here we have a plaintiff conducting its business in two separate divisions. One, the business of refining crude oil into various petroleum products. The other in distributing products to consumers. The latter division operates independently of the former. The refinery reports to the president in charge of such operation in Pittsburgh, Pennsylvania.

As to this operation it is admitted by plaintiff in the petition that a labor dispute exists and a strike is being carried on and production has ceased. In the Sales Division, which has an A. F. L. contract, there is no labor dispute and the contract under which the employees of such division work, and which is made for the benefit of the employer and the employees, is in full force and effect.

A witness called by defendant C. I. O. unions who testified that he was a member of such union said that he carried a banner on the picket line at the bulk terminal for the purpose of advertising the fact that they had a dispute. We are not so naive as to be impressed by this bit of whimsey. Before the witness appeared deliveries from the bulk plant went on without interruption. Deliveries ceased immediately upon his appearance on the picket line. It would seem that the only purpose of the picketing was to bring pressure on the plaintiff by stopping its deliveries and, thereby, compelling plaintiff to meet the demands of the striking C. I. O. union.

The evidence disclosed that as a part of the picketing opera-

tion at the bulk plant there were times when the pickets carrying banners were walking in circles or ovals in front of the gates. It is contended by defendant C. I. O. union that the picketing was peaceful.

In the course of the opinion in the Anderson case, supra, the court said:

"However, the privilege of picketing or bannering is limited to peaceful persuasion and is lost when there is resort to violence, intimidation, falsehood, defamation, obstruction of highways, **obstruction to means access to employer's place of business, or other unlawful means.**"

And the syllabus of the Anderson case recites the following:

"4. Picketing or bannering as a means of exercising the right of free speech will be afforded constitutional protection **so long as it is lawfully conducted,** but the right of free speech is predicated on the lawful exercise of such right, and if, through conspiracy or unlawful conduct, the result of its exercise by such means unlawfully injures another **in his property rights,** the guaranty ceases and the exercise of the claimed right by such means may be enjoined or prohibited."

The plaintiff has a property right in the existing contract, between itself and the A. F. L. union covering its employees. The picketing conducted by the C. I. O. union, designed to cause a breach of that contract is therefore, unlawful and should be enjoined.

The court further says at page 562 of the opinion (Anderson case):

"The supreme test in determining the right to apply economic pressure is legality. **The right to peacefully picket or banner is not free from limitation and does not extend beyond the bounds of legality.**"

"The reasons for the legal distinction between primary and secondary boycotts that the latter are unlawful and enjoinable are that they constitute an unlawful interference with the rights of innocent third persons and of the rights of the public generally, and that one not a party to industrial strife may not, against his will, be made an ally of either one of the parties for the purpose of accomplishing the destruction of the other."

When the purpose of picketing is to induce a breach of contract, as in the instant case, it constitutes an unlawful interference with the rights of innocent persons and will be enjoined. The privilege of picketing is lost when it is carried on by obstruction to means of access to the employer's place of business or other unlawful means.

Counsel for the defendants in oral argument stated that the decision of Honorable John M. McCabe, judge of the Court of

Common Pleas of Lucas County, in the case of Standard Oil Co. et al. v. Oil Workers International Union, C. I. O., et al., was a parallel case with the one at bar and established the law in this jurisdiction. In that case the union representing the employees in the Sales Division of the Standard Oil Company (which union compares with the A. F. L. union involved here), joined with their employer in seeking an injunction against the C. I. O. union, which was on strike at the refinery and which, as here, was attempting to picket the Sales Division of the company. Counsel for the defendants in the case at bar told the court that Judge McCabe had limited the pickets in that case and that such order constituted a binding precedent which should be applied in the instant case.

We have learned, however, from Judge McCabe that he was not called upon to decide any question as to the scope of the injunction. On the contrary, counsel for the company, counsel for the plaintiff union representing the employees of the Sales Division, and counsel for the defendant C. I. O. union representing the employees of the refinery division **agreed upon** the terms and conditions of the injunction to be issued and the injunction as thus stipulated by counsel was simply approved by the court. The members of the bar well know that the disposition of litigation through agreement of the parties cannot be regarded as establishing any legal precedent, whatsoever, for future cases, particularly when the court hears no evidence and is not called upon to adjudicate issues either of fact or law.

The motion for a temporary injunction is granted and will be effective upon the signing of the order of the court and the posting of a bond in the amount of $500.00.