**LOCAL UNION NO. 118 OF THE UTILITY WORKERS UNION OF AMERICA, AFL-CIO et, Plaintiffs-Appellees, v. UTILITY WORKERS UNION OF AMERICA, AFL-CIO et, Defendants-Appellants.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3975.   Decided October 16, 1958.

Albert Galusha, Youngstown, for plaintiffs-appellees.
Herschel Kriger, Canton, for defendants-appellants.

## OPINION

Per CURIAM.

Defendants, The Utility Workers Union of America, AFL-CIO, and William R. Munger, Vice President and Regional Director of Region 3 of the Utility Workers Union of America, AFL-CIO, appealed to this court on questions of law and fact from a judgment of the court of common pleas entered in case number 150384 for plaintiffs in their action to permanently enjoin defendants from enforcing the decision and order of its National Executive Board ordering the suspension from office and membership in the union of Roy J. Baughman, William H. Rosser and Elmer F. Salzman, plaintiff officers, and restraining the Utility Workers Union of America, AFL-CIO and William R. Munger, National Vice President, who was appointed administrator and trustee over the affairs of Local 118 by the National Executive Board, from taking over the Local Union and all its books, records, property, and assets, with full authority to appoint such temporary officers for Local 118 as he may deem necessary.

By interpleader in case number 150741 the Ohio Edison Company, called the company, prayed that the parties in case number 150384 "be required to interplead together concerning their claims in" all dues deducted under agreement and that the Ohio Edison Company "be permitted to deliver said money to some person designated by the court to receive the same." This petition of interpleader was consolidated with case number 150384 by the court of common pleas with the provision that the petition in case number 150741 be considered and treated as an answer and cross-petition in case number 150384.

Ruling on such interpleader the trial judge ordered the company to pay over to Local 118 all dues deducted under its agreement pending final determination of case number 150384.

The matter is before this court on plaintiff's petition, defendants' answer and plaintiff's reply thereto; the cross-petition of defendants; plaintiffs' answer and defendants' reply thereto; the petition of interpleader filed by the company treated and considered in the trial court and here as an answer and cross-petition, and plaintiffs' and defendants' answer thereto; the evidence, and briefs of plaintiffs and defendants.

The charter of The Utility Workers Union of America, AFL-CIO, herein designated as the National Union granted Local Union No. 118 of the Utility Workers Union of America, AFL-CIO, called Local 118, "all rights and privileges and responsibilities of the Constitution, By Laws, Conventions, and actions of all duly constituted authority to which you agree to abide."

Local Union 118, together with the Ohio Edison Joint Council of Utility Workers, called the Joint Council, negotiated collective bargaining agreements with Ohio Edison Company providing for termination on July 1, 1956, by written notification, otherwise to remain in effect.

Under Article I of the agreement all parties agreed "that there shall be no strike, concerted slowdown, lockout, concerted failure to report for work, cessation of work, picketing, or other interference with the operations of the company during the period of this agreement, or

during any period of negotiation for the renewal or extension thereof." Article I further provided that any employee violating such agreement would be deemed to have resigned, and that the National Union or the Local Unions would not be held civilly liable for damages provided they had not "authorized, condoned, or advised the action, and that the National Union and the Local Unions immediately used their best efforts to induce the resumption or work and orders the employees to return to work."

There is evidence that Local 118 was dissatisfied with the Joint Council, principally because it had proposed amendments to the Council's Constitution to insure the honesty of balloting on strike action, involving the affiliated locals, which proposals the Joint Council rejected. This rejection resulted in the passage of a recommendation by the Executive Board of Local 118 to terminate its affiliation with the National Union, which was duly adopted resulting in the deletion from its constitution and by-laws of all reference to the Joint Council stated in Article VIII thereof.

As the result of a second such motion the Joint Council and the Vice President and Director of Region 3 of the National Union were notified by letter dated April 10, 1956, that henceforth it would bargain separately with the Company and submit its own proposals for changes in the present agreement. No objection nor protest concerning Local 118 withdrawal from the Joint Council was received from the National Union.

Defendant Munger admitted he helped compose a letter dated April 18, 1956, from the President of the Joint Council in reply to Local 118's letter dated April 10, 1956, which provided inter alia that:—

"The Council wishes to inform you and your members that while they regret very much the action you have taken, they will in no way interfere with your Local Union, and that if it becomes necessary to take any action against the Company, we will in no way involve your Local Union, and by the same token, if your Local Union becomes involved in any action against the Company the Local Unions comprising the Council do not intend that you involve them. * * *

"We are also convinced that with his guidance you did carry through with the proper notices, meetings, etc., as provided for in your Local Constitution and By-Laws to change your Constitution so as to remove the Ohio Edison Joint Council as the bargaining agent."

While copies of the changes in Local 118's constitution and by-laws apparently were not sent to the National President, it is obvious that the National Vice President, William R. Munger, had knowledge thereof.

Thereafter Local 118 advised the Company in writing on April 24, 1956, that it desired "to reopen the present collective bargaining agreement which is subject to reopening on July 1, 1956, we are attaching hereto the demands of our local union for changes in the agreement." A copy of this letter was mailed to defendant Munger.

Local 118 made no demand upon the Company to terminate the 1954-1956 agreement on July 1, 1956, nor to waive the provision of Article I of that agreement.

Upon failure of agreement on proposed changes the Company requested Local 118 to defer negotiations for thirty days, and in consideration thereof offered to adjust basic hourly wage rates effective as of July 1, 1956.

At the same time representatives of Local 118 meeting with a member of Akron Local 126 who was a member of the Joint Council negotiating committee and another member of Akron Local 126 advised representatives of Local 118 that if Local 118 voted to grant any extension it could not honor picketing, if the Joint Council decided to send pickets to Youngstown, in the event of a strike by the Joint Council.

On the same evening Local 118 voted to extend negotiations to July 20, 1956, and its members were advised of the attitude of Akron Local 126 with respect to honoring picketing.

On July 20, 1956, Local Union 118 extended negotiations to July 30, 1956. These negotiations by request of the Company were subsequently extended to August 9, 1956.

Prior to August 9, 1956, Local 118 was advised that if an extension was voted by Local 118 picketing by the Joint Council would not be honored in view of the provisions of Article I of the 1954-1956 agreement.

Defendants were familiar with all of the extensions.

On August 5, 1956, storm damage caused to company property required all employees in the bargaining unit to work practically around the clock for several days to repair the damage.

On the day after the storm struck and while employees of the Youngstown Division of the Company were engaged as aforesaid the Joint Council without notice to Local 118 struck the Company and picketed certain of its premises, and about five o'clock P. M. on August 6, 1956, placed pickets only at the Company's South Avenue Line Shop in Youngstown.

On the morning of August 7, 1956, some of the employees of the Company did not cross the picket line and sent for President Baughman of the Local Union who advised them that under the provisions of Article I of the 1954-56 Agreement Local 118 could not honor the picket line, and if any individuals were discharged for so doing the Local Union couldn't do anything for them.

There is evidence that members of Local 118 were readvised by others to respect the picket line, for the purpose of supporting the strike. ｀

The Joint Council strike was terminated about August 8, 1956, and a contract entered into by the Company notwithstanding Local 118 continued to negotiate an agreement with the Company embodying its proposed changes, which contract was signed on September 10, 1956, and was approved and signed by the National Union.

In that agreement the company agreed to pay over to the Local Union all dues under the provisions of Article III (see Section 3a, p. 5); seniority provisions separate and apart from other divisions or locations of the company were provided for; and separate seniority for the Youngstown Location was also provided for in the 1954-56 Agreement.

On October 2, 1956, charges were instituted by President Fisher of

the National Union against the individual plaintiffs. The charges alleged that each of the individual officers had violated Article II, Section 2, and Article VII, Section 1, of the National Union's Constitution in that they had each refused to honor picket lines, established by the Joint Council with the approval of the National Union, at the Youngstown Division of the Company; and that each of them had instructed the members of Local 118 to cross such picket lines.

Both defendant Munger and Executive Board Member Watson, a member of the trial board, admitted that no charges had been instituted against the Local Union; nor was any charge filed as to amending the constitution of Local 118.

The National Union's Constitution does not contain any specific provisions as to picketing nor penalties for crossing picket lines, nor provisions applicable thereto.

Plaintiffs Baughman, Rosser and Salzman appeared at the hearing before the National Executive Board of the Union in Akron, on October 17, 1956, represented by counsel. Neither of them testified orally nor did any witness testify orally in their behalf. A mimeographed statement of facts and argument with exhibits was presented to each member of the Board, through their counsel. The jurisdiction of such board, to find them guilty of any charge under the provisions of the National Constitution, was questioned.

The individual plaintiffs herein were ordered suspended from office and membership for five years and the defendant, William Munger, was appointed trustee over the affairs of Local 118 with authority to appoint such temporary officers as he deemed necessary.

The plaintiff union officers and the Local Union refused to abide by the findings, decision and order of the National Union's Executive Board and instituted the action in the court of common pleas.

Defendants contend the rule is:—

"1. That a court will not take jurisdiction at any time in the affairs of an association unless property rights are involved. Social or mere membership relationships will not be inquired into.

"2. Where property rights are involved, a court can protect property rights by equitable action, but, before the court will act, all of the internal remedies of appeal within the association must be exhausted."

No written charges were filed against Local 118 in accordance with the provisions of the Constitution, and no hearing was given Local 118.

On hearing the trial judge directed the Company to disburse funds in its hands derived from deduction of local union dues, and all future funds of a similar nature coming into its custody, to Local 118, or its designated officers, and ordered Local 118 upon receipt thereof to forthwith remit to the National Union any sum, or sums, due it from Local Union 118 in accordance with the agreement existing between them.

Plaintiffs contend the following questions are presented for the consideration and determination of this court:—

"1. Does National Labor Relations Board have exclusive jurisdiction over questions presented in the instant case?

"2. Were plaintiffs required to exhaust their remedies provided for

under the National Union's Constitution before the court could assume jurisdiction under the circumstances of the within case?

"(A) Would an appeal have been futile?

"3. Did the Executive Board of the National Union have jurisdiction to try plaintiff officers and render its finding and decision against them in the absence of any applicable constitutional provisions with respect to such charges?

"(A) Could violations of National Union's Constitution be implied?

"(B) Were valid charges filed against Local 118?

"4. Under the 'termination clause' at Article XX Page 58 of the 1954-56 Agreement between Local 118 and the Company (P. E. No. 14), was Article I of said agreement in full force and effect at the time of the picketing herein, and was both Local 118 and the National Union bound thereby without regard to the extension agreements between Local 118 and the Company?

"5. If Article I of the 1954-56 agreement between Local 118 and the Company was in effect, did the Local Union affiliated with the Joint Council have the right to picket members of Local 118?

"(A) Was the attempt of such Local Unions to induce members of the Local 118 to respect the picketing and withhold their work from management in violation of the Laws of Ohio, the labor management relations act and the public policy?

"(b) Were members of Local 118 legally bound to maintain their agreement and not respect the picketing?

"6. Was the National Union estopped from asserting the provisions of the National Constitution with respect to approval of the agreements extending negotiations made by Local 118 with the Company because of its conduct in connection therewith?

"(A) Did the conduct of the National Union in connection therewith amount to waiver?

"7. Was the trial, decision and order of the National Union's Executive Board unreasonable, arbitrary and oppressive?

"8. Under the provisions of the Agreement between Local 118 and the Company under Article III Section 2a (N. E. 17) is the Local Union entitled to payment of monthly dues deducted by the Company as against claims of the National Union?

Reviewing the evidence and considering the arguments of counsel we concur in the reasoning, finding and decree of the trial judge lifted from his opinion that:—

"* * * The punishment inflicted upon the plaintiff officers is of such a nature and so drastic that it must have been meted out based upon the picket line episode. The same thing can be said as to the refusal or failure to submit purported amendments to the By-Laws to the National President for approval.

"It is conceded that Local 118 had a legal right in every way to withdraw from the Joint Council, and it appears without question that the National Vice President knew of the action that had been taken and adopted it. The failure to complete the paper work by sending copies to the National President is not the basis of the penalty imposed by the

National Executive Board. These two charges were of the nature that would apparently be put in as an anchor to windward, so to speak.

"Coming to the other charges, it is to be noted that they are based upon general language in the Constitution. There is no specific provision in the Constitution dealing with the specific acts of the plaintiff officers. Article IV, Section 2-B, provides among other things that the National President 'shall interpret the meaning of this Constitution and his interpretation shall be subject to review by the National Executive Board.' The effect of the ruling by the National Executive Board is to interpret the Constitution in the various provisions above discussed as legalizing picketing by members of a national union of an employer's plant to compel a work stoppage when the employees of that plant, members of the same union, are under a valid contract executed and approved by the National Union preventing a strike, concerted slowdown, concerted failure to report to work, a cessation of work, picketing, or other interference with the operations of the Company. Was it the law of Ohio that the Joint Council and the National Union had a legal right to compel the membership of Local 118 to breach its contract, which was also the National's?

"As between the Ohio Edison Company and members of Local 118, the contract is clear that so long as negotiations continue there shall be no work stoppage or cessation of work. Likewise as between those two, labor difficulties of such a nature are solely within the jurisdiction of the N. L. R. B. Guss v. Utah Labor Board, supra. The within controversy, however, not being within the Federal Power act of Congress, the State law is applicable. There being no statute of Ohio involved, the long established principles of equity take hold. It has long been held in the law of contracts that the chancelor will by injunction restrain acts intentionally done to force or compel a breach of contract where there is no adequate remedy at law, and that principle has been carried into labor law and established as the public policy of the law of the State of Ohio. **Chucales et al. v. Royalty et al., 164 Oh St 214**; Standard Oil Co. v. Oil Workers Union, decided July 1, 1957, 40 LRRM 2445; **General Electric Co. v. International Union, United Automobile Workers, etc., 93 Oh Ap 139**; Anderson Sons Co. v. Local Union No. 311, 156 Oh St 541; **Gulf Refining Co. v. Oil Workers International Union, 68 Abs 225**.

"It therefore follows that the Constitution of the National Union, as interpreted by the National President and the National Executive Board in the respects indicated, does contravene the laws of the State of Ohio, and, therefore, the plaintiffs may bring their action in a court of equity without appealing to the Convention.

"There is another reason, however, which supports this position, and that is in the provisions of the Constitution providing for appeal to the Convention. Article XIV, Section 9, provides that the accused may appeal a decision of the National Executive Board to the National Convention. Article XV provides that the regular National Convention shall be held every eighteen (18) months, and it is stated in the record that the next convention is due to be held in October of this year at Miami,

Florida. Section 1 of that article makes provision that the convention may be advanced one month or postponed one month upon a resolution adopted by the National Executicve Board. Section 16 provides as follows:

" 'The National President shall appoint, prior to the opening date of the Convention and subject to the approval of the Convention, such committees as are necessary to conduct the affairs of the Convention. Such committees shall meet before the opening date of the Convention and shall proceed to consider all resolutions, appeals, reports and constitutional amendments submitted to the Convention.'

"Section 12 provides that all resolutions to be considered by the Convention shall be sent to the National Secretary-Treasurer and be in his hands not later than ten days prior to the convening of the Convention. Section 17 makes provision for the order of business at the Convention and unless suspended by a two-thirds vote it shall be as follows: (1) Call to order by National President, (2) Report of Credential Committee, (3) Roll Call, (4) Report of Committee on Rules and Order, (5) Ratification of Committee Appointments, (6) Report of Officers, (7) Submission of Minutes of Last Convention, (8) Report of Committees, (9) Unfinished Business, (10) New Business, (11) Nomination and Election of Officers, (12) Recommendations on Place for Next Convention, (13) Good and Welfare, and (14) Adjournment. No other provision is noted in the Constitution governing appeals before the Convention.

"It is to be noted that the National President, who preferred the charges before the National Executive Board and who presided at the National Executive Board at the hearing, is given full and sole power to appoint the committee on appeals, which 'shall meet before the opening date of the Convention and shall proceed to consider . . . appeals . . .'; the National President now in office will preside at the Convention until the election of officers later on in the order of business.

"It must not be thought by this line of reasoning that the court is impugning the honesty, motives, integrity, or standing in any way of the present National President, as he is apparently a very estimable gentleman, but the Court is required to look at the matter objectively as an appellate system without regard to the individual holding the office. Such a system as here exists is not in accord with the fundamental principles of our system of justice under law. It has been held by the courts that where the method of appeal is arbitrary, frivolous, futile or vain and not in accord with the sound principles of justice, the member need not resort to that appeal. Washington Local Lodge v. International Brotherhood, 203 Pac. (2nd) 1019; Crossen v. Duffy, supra, 168 A. L. R., Page 1472, et seq.; Armstrong v. Duffy, supra.

"It follows that the plaintiffs are not barred from seeking redress in this Court of Equity, and it likewise follows that the judgment of the National Executive Board is unreasonable, arbitrary, and oppressive.

"A decree will, therefore, be drawn vacating the suspension from office and membership in said Local 118 of the plaintiff officers, and that they be forthwith reinstated as officers for the term to which they had

been elected, and as to any reelection subject to the decision of the members of the said Local; that the said William R. Munger, designated administrator and trustee, and the Utility Workers of America, AFL-CIO, be and hereby are restrained from seizing or taking over the books, records, property, or assets of plaintiff Local Union and from interferring in any manner with the internal affairs of said Local Union based upon any matters involved in the within case; that the journal entry of February 20, 1957, in the interpleader case by the Ohio Edison Company, being No. 150741, is confirmed, and judgment is entered against the National Union for costs; exceptions to all parties, and decree in conformity herewith is to be prepared by counsel."

Counsel for defendants cite **International Union Of Steam & Operating Engineers et al. v. Owens, 119 Oh St 94,** where at page 98 the court said:—

"It is a well-settled principle of law, recognized by the courts of this state and by the courts of other states, that the members of a fraternal association by adopting a constitution and by-laws and providing reasonable rules and regulations for settling their own disputes, and by establishing their own tribunals of original, intermediate, and appellate jurisdiction, become bound thereby, provided such constitution, by-laws, rules, and regulations do not contravene the laws of the state. It is also well settled that the members of such an association must conform to the reasonable rules and regulations thereof and must exhaust all remedies within the association and before such regularly constituted tribunals.

"It is conceded in the instant case that the International Union of Steam and Operating Engineers is such a fraternal organization, and it must therefore be conceded that, if the defendant in error has pursued all his remedies before the tribunals within the association, and if the duly constituted tribunals have failed to observe the constitution, by-laws, rules, and regulations of the association, the defendant in error is entitled to invoke the aid of the court to compel such tribunals to accord to him those rights, if any, which are shown to have been denied."

In **5 O. Jur. (2nd), page 440, Section 7,** it is said:—

"It is a well established and uniform rule that courts of equity have no authority to interfere with the action of voluntary and unincorporated associations where no property right is involved."

Perhaps we have not answered specially each of the questions which the parties contend by brief are presented and which are quoted infra, but we have answered a sufficient number of them to decide correctly, we believe, the matter presented to us.

Finding and decree as in the court of common pleas.

GRIFFITH and PHILLIPS, JJ, concur.

### DISSENTING OPINION

By NICHOLS, PJ.

The plaintiff is a voluntary association, one of a number of local unions engaged in the performance of service to employers, and the Local came into existence solely as an integral part of the National Organization named as defendant herein,

The plaintiff Local when it affiliated with the National Union had no separate existence. It had voluntarily subscribed to the Constitution of the National Union, which provided that all controversies between the several locals and the members thereof would first be submitted for determination to the executive committee from which an appeal could be taken to the general convention of the national organization, and until such steps were taken resort could not be had to the courts.

I quote two provisions of the National Constitution, which in my judgment are determinative of this controversy at this stage of litigation, to-wit:—

"Article III. Membership.

"Section 1. This Organization shall be composed of Local Unions having for their membership men and women employed in the public utilities, embracing the Gas, Electric, Water, Steam and related industries or in any other place now under the jurisdiction of the National Union as well as officers, staff representatives, or employees of the National Union or Local Unions. * * *."

"Article XIV. Charges and Trials.

"Section 11. In no case shall a member of subordinate body appeal to a Civil Court for redress until he or it has exhausted his or its rights of appeal under the laws of the National Union."

The real question in this case is whether the Local Union, plaintiff herein, was required to follow the procedure set up in the National Constitution before resorting to the courts for settlement of their differences.

I have no complaint as to the fact that in a chancery case equitable principles are to be applied, but I hold that before the equity jurisdiction of the courts may be invoked the plaintiff was bound first to submit its grievances to the Executive Committee. **This it did** and thereby recognized the binding effect of the constitutional provision prohibiting resort to the courts in the first instance. It was only after the Executive Committee decided adversely to the Local Union that it sought to invoke the jurisdiction of a court of equity.

I hold that its sole right was to appeal to the General Convention from the adverse decision against it rendered by the Executive Committee.

Unquestionably the penalties inflicted by the Executive Committee are severe wherein that Committee suspended the officers of the Local for a period of five years and ordered the assets of the Local to be taken over pending a final decision by the General Convention, but at the time this case was brought into the equity court the court was without jurisdiction to intervene since all the proceedings had before the Executive Committee were in strict compliance with the Constitution of the parent organization. When the convention considers this matter it may be presumed it will relieve against the hardships, if any, involved in the decision of the Executive Committee, but if not, then, and only then, resort may be had to a court of equity for relief.

The action in the court of common pleas of this county should be dismissed for want of jurisdiction.